UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIGHT HARRY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KCG AMERICAS LLC, et al.,<br><br>　　　　　Defendants. | Case No.17-cv-02385-HSG<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 38, 40, 43 |

Pending before the Court are three motions to dismiss Plaintiff Bright Harry's First Amended Complaint. *See* Dkt. Nos. 38, 40, 43. For the reasons set forth below, the Court **GRANTS** the motions.[1]

## I.   BACKGROUND

### A.   Factual Allegations

Plaintiff, who is proceeding pro se, asserts 10 causes of action against 14 defendants. Defendants are KCG Americas, LLC ("KCG"), Main Street Trading, Inc. ("MST"), Wedbush Securities, Inc. ("Wedbush"), ION Trading, Inc. ("ION"), and Computer Voice Systems, Inc. ("CVS"), as well as several individual officers from the companies. The "crux" of Plaintiff's action is that Defendants' trading platform failed to work as promised, resulting in his losing millions of dollars. *See* Dkt. No. 11 (First Amended Complaint, or "FAC") ¶ 65. Among Plaintiff's causes of action are fraudulent concealment, fraudulent misrepresentation, breach of fiduciary duty, and breach of contract, as well as violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, and California's Consumer Legal Remedies Act,

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

Cal. Civ. Code § 1750 *et seq.*

For purposes of this motion, the Court takes the following allegations to be true. In 2013, Plaintiff formed a business venture with a friend, Ronald Draper, to trade electronic commodity futures spreads. FAC ¶ 4. Draper contributed the "initial $275,000 Trading Capital," while Plaintiff contributed, *inter alia*, unspecified "Operational Capital." *See id.* On November 6, 2013, MST, an introducing broker, connected Draper and Plaintiff with broker KCG, with whom they opened a trading account. *Id.* ¶¶ 5, 28. The account "was opened under Draper's name only for easier tax filing with the IRS, and for Draper to have full control of his $275,000 Good Faith Deposit at the start of this Trading Business Venture." *Id.* ¶ 5. Plaintiff alleges he was the sole actor involved in actual trading. *See id.* Later, KCG would be acquired by Wedbush, another broker. *Id.* ¶ 30. At all relevant times, KCG or Wedbush outsourced the management of their trading platform to two entities: CVS, who handled the front-end, and ION, who ran the back-end. *See id.* ¶¶ 32, 35.

Beginning on November 15, 2013, Plaintiff experienced technical issues with the trading platform. *See id.* ¶ 74. On November 15, for example, the platform failed "to route and clear" Plaintiff's trade orders. *Id.* The same issue occurred on November 17, 18, and 19, *see id.* ¶¶ 75-76, and problems continued through April 28, 2015, *see id.* ¶¶ 77, 78, 81, 85, 93, 94, 105-07, 114.[2] Plaintiff alleges that some of these failures resulted in missed trade opportunities. *See id.* ¶¶ 77 (alleging a "total loss of . . . missed trade opportunities" amounting to $394,400); 85 ($127,600); 105-07 ($5,000). When Plaintiff "closed out all his open trading positions" on April 28, 2015, $6,621.49 of Draper's initial contribution of $275,000 remained in the account. *Id.* ¶ 114.

In addition to the trading platform's technical issues, Plaintiff avers a laundry list of other violations, including allegations that KCG and Wedbush fraudulently concealed information about their business operations, such that he never would have maintained a trading account with them had he known of the concealed facts, *see id.* ¶¶ 43, 47, 52, 53; that KCG, Wedbush, ION, and CVS

---

[2] Throughout the FAC, Plaintiff cites—often in conclusory fashion—to exhibits in a "'Comprehensive Exhibits' File Folder." *See, e.g.*, FAC ¶¶ 74, 75, 77, 82, 83, 85-97, 103, 105, 109-13. The Court has no idea what this "folder" is, and accordingly disregards these references in its analysis.

2

engaged in fraudulent misrepresentation through advertising on their respective websites; *see id.* ¶¶ 58, 61, 66; that Defendants breached their fiduciary duty to assist Plaintiff in "obtain[ing] the best execution" of his trade orders, *see id.* ¶ 119; and that KCG, Wedbush, MST, and CVS committed breach of contract as to the terms of Plaintiff and Draper's trading account, *see id.* ¶¶ 127-28, 129, 133-35.

All told, Plaintiff seeks $287,462.50 in "Direct Damage[s]" and $45 million in "Direct and Consequential Damage[s]." *Id.* ¶ 117. Plaintiff does not explain how he arrived at those figures, relying in large part on exhibits to which the Court does not have access. *See id.* Plaintiff also seeks "the $4,527.25 he paid Defendants for the dysfunctional" front-end trading platform. *See id.* at 79 (prayer for relief).

### B. Procedural Posture

Plaintiff filed the FAC on May 16, 2017. Dkt. No. 11. On July 24, 2017, Defendants filed three motions to dismiss: one by ION and its officers named in the FAC, Dkt. No. 38, one by CVS and its officers named in the FAC, Dkt. No. 40, and another by KCG, MST, and Wedbush, as well as their officers named in the FAC, Dkt. No. 43. Plaintiff filed an opposition on August 21, 2017. Dkt. No. 58. Defendants replied on August 28, 2017. *See* Dkt. Nos. 63, 64, 66.[3]

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss based on the court's lack of subject matter jurisdiction. "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). A facial attack "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* A factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

"A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean*

---

[3] Plaintiff submitted two filings after Defendants filed their reply briefs. *See* Dkt. Nos. 68, 71. The Court accordingly disregards these filings, given their non-compliance with the Local Rules.

*Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). Because a plaintiff's standing is a prerequisite to a federal court's exercising subject matter jurisdiction over her cause of action, a defendant may challenge standing via a Rule 12(b)(1) motion. *See, e.g.*, *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010) (affirming district court's grant of Rule 12(b)(1) motion asserting that plaintiff lacked standing).[4]

"Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). For that reason, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and internal quotations marks omitted). If dismissal is still appropriate, a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citation and internal quotation marks omitted). Where leave to amend is appropriate, "before dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

## III. DISCUSSION

Defendants raise several arguments as to why Plaintiff's FAC should be dismissed. Because the question of standing is determinative, however, the Court need not reach Defendants' remaining arguments.

### A. Plaintiff Lacks Standing to Recover for Any Losses Stemming from Draper's $275,000 Contribution.

Consistent with Article III, "the 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely

---

[4] Although only one of the three motions before the Court expressly raises and applies the standard under Rule 12(b)(1), the Court is nonetheless "obligated to consider sua sponte whether [it has] subject matter jurisdiction." *Jasper v. Maxim Integrated Prods., Inc.*, 108 F. Supp. 3d 757, 764 (N.D. Cal. 2015) (quoting *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004)).

to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61). Injury in fact is "the first and foremost of standing's three elements," and requires a showing that a plaintiff "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1547-48 (citations, internal quotation marks, and brackets omitted). To be concrete, an injury "must actually exist." *Id.* at 1548. To be particularized, "the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

Plaintiff brings this action largely to recover losses to the initial $275,000 contributed to the trading account by Draper. *See* FAC ¶¶ 4-5, 39, 72, 114, 117. As alleged, the trading account "was opened under Draper's name only for easier tax filing with the IRS, *and for Draper to have full control of his $275,000.*" *Id.* ¶ 5 (emphasis added). In other words, Plaintiff brings suit to vindicate the invasion of a legally protected interest (*i.e.*, the trading capital) that is indisputably not his. While Plaintiff alleges that he was the only one actively involved in trading, *see id.*, he never alleges any facts that would allow this Court to draw the inference that Draper's money at some point became his. Nor does Plaintiff allege facts supporting the inference that he ever made any of the trades at issue using *his own* money. While Plaintiff casts Draper as an "*other* part[y] in interest," *see* FAC at 17 (emphasis added), it is clear that here, Draper is the *only* party in interest. Plaintiff thus lacks an injury in fact for purposes of Article III standing.[5]

Moreover, Plaintiff's lack of Article III standing precludes him from asserting standing based on a private right of action conferred by a federal statute, as he attempts to do in his opposition. *See* Dkt. No. 58 at 18. Specifically, Plaintiff asserts that he has standing under the

---

[5] Plaintiff's other arguments relating to his alleged injury are unpersuasive. To the extent he contends that the measure of damage is the profit he would have made, but for the trading platform's technical issues, such an injury would be improperly "conjectural" and speculative, rather than "actual." *See Spokeo*, 136 S. Ct. at 1547-48. Moreover, the physical or mental toll of trading, generally alleged, is not sufficiently "concrete." *See id.* at 1548 ("When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term—'real,' and not 'abstract.'"). Plaintiff's argument that he, as the actual trader, "own[ed] the leverage" in trading futures contracts—and thus the standing to sue—also fails to allege any concrete injury. *See* Dkt. No. 58 at 15. Finally, his submission that he sustained a vague "procedural" injury resulting from a related administrative hearing before the Commodity Futures Trading Commission is not pled in the FAC, and does not state a concrete injury in any event. *See id.* at 17.

Commodity Exchange Act, which grants private rights of action against persons "liable for *actual damages* resulting from" certain commodities transactions. *See* 7 U.S.C. § 25(a)(1) (emphasis added). The same section describes these rights of action as "the exclusive remedies . . . available to any person who *sustains a loss* as a result of any alleged violation of this chapter." *Id.* § 25(a)(2) (emphasis added). But, as established above, if anyone suffered actual damages and sustained a loss, it was Draper, not Plaintiff. Further, Plaintiff's contention that he has standing under California law is inapposite. *See* Dkt. No. 58 at 20. "State standing rules need not be honored by the federal courts if Art. III requirements are not met." *As You Sow v. Sherwin-Williams, Co.*, No. C-93-3577-VRW, 1993 WL 560086, at *2 n.3 (N.D. Cal. Dec. 21, 1993) (quoting *Mangini v. RJ Reynolds Tobacco Co.*, 793 F. Supp. 925, 929 (N.D. Cal. 1992)); *see also Santos v. TWC Admin. LLC*, No. CV 13-04799 MMM (CWx), 2014 WL 12558009, at *18 (C.D. Cal. Aug. 4, 2014) (same).

Accordingly, Plaintiff has failed to plead facts showing that he has the type of injury in fact required by Article III—that is, one that actually exists and that affects him in a personal and individual way. He thus lacks standing to recover any alleged losses stemming from the $275,000 with which he traded, leaving this Court without subject matter jurisdiction over the matter.

### B. Plaintiff Makes No Factual Allegations Regarding the Sole Form of Recovery to Which He May Be Entitled.

While Plaintiff may not recover for any losses stemming from Draper's capital contribution, he also demands "the $4,527.25 he paid Defendants for the dysfunctional front-end" platform by CVS. *See* FAC at 79. But Plaintiff makes no factual allegations regarding this sum, mentioning it only in passing and for the first time on the last page of his 79-page FAC. It is unclear, for example, to whom he allegedly paid this amount. Assuming without deciding that Plaintiff has standing to assert such a claim, he will be required to plead in accordance with Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement if his claim "sound[s] in fraud." *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted); *see also Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (stating requirement that a claim

sounding in fraud state "the who, what, when, where, and how" of the alleged conduct).[6]

### C. Plaintiff Is Granted Leave to Amend.

In this case, even construing Plaintiff's FAC "so as to do justice," *see* Fed. R. Civ. P. 8(e), dismissal is appropriate. But the Court cannot conclude—at least at this juncture—that Plaintiff's FAC "could not possibly be cured by the allegation of other facts." *See Lopez*, 203 F.3d at 1130. Accordingly, the Court will give Plaintiff one opportunity to amend the FAC to address the deficiencies discussed above, if he can do so truthfully. Should Plaintiff choose to amend the FAC, the Court directs Plaintiff to focus only on *his* losses, and to clearly state his claimed basis for federal subject matter jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's FAC is **DISMISSED WITH LEAVE TO AMEND**. Should Plaintiff choose to amend the FAC, he is directed to do so in accordance with the discussion above no later than 28 days from the date of this Order.

**IT IS SO ORDERED.**

Dated: 3/7/2018

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[6] Plaintiff contends in the FAC that this Court has both diversity and federal question jurisdiction over this matter. *See* FAC ¶¶ 17-19. While it is unclear at this juncture whether the Court would have or maintain federal question jurisdiction over a Second Amended Complaint, the Court notes that it cannot exercise diversity jurisdiction where the amount in controversy is $4,527.25, well below the more-than-$75,000 threshold. 28 U.S.C. § 1332(a). Nor could the Court have exercised diversity jurisdiction over the FAC, since several of the defendants were—like Plaintiff—citizens of California. *See* FAC ¶¶ 22 (Plaintiff), 28 (MST), 29 (president of MST Patrick Flynn), 30 (Wedbush), 31 (CEO and president of Wedbush Edward Wedbush); *see also Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1004 (9th Cir. 2001) (stating requirement that for diversity jurisdiction to lie, "each plaintiff must be diverse from each defendant") (citations omitted).