UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIGHT HARRY,<br><br>Plaintiff,<br><br>v.<br><br>KCG AMERICAS LLC, et al.,<br><br>Defendants. | Case No.17-cv-02385-HSG<br><br>**ORDER STRIKING IMPERMISSIBLE FILINGS; DENYING MOTION TO CONSOLIDATE; DENYING MOTION TO STAY; DENYING MOTION FOR JUDICIAL REVIEW; GRANTING MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 76, 86, 89, 90, 102, 103 |

Pending before the Court are a motion to consolidate, a motion to stay, a motion for judicial review, and three motions to dismiss. For the reasons set forth below, the Court **DENIES** the motion to consolidate, **DENIES** the motion to stay, **DENIES** the motion for judicial review, and **GRANTS** the motions to dismiss. The Court also **STRIKES** several impermissible filings by Plaintiff Bright Harry.[1]

I.      **BACKGROUND**

Plaintiff has named 14 defendants in this action:

- KCG Americas, LLC ("KCG"), Main Street Trading, Inc., and Wedbush Securities, Inc. ("Wedbush"), as well as several of the companies' individual officers (collectively referred to as "the Wedbush Defendants");

- ION Trading, Inc. ("ION") and several of the company's individual officers (collectively referred to as "the ION Defendants"); and

- Computer Voice Systems, Inc. ("CVS") and several of the company's individual officers (collectively referred to as "the CVS Defendants").

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

1    The Court will collectively refer to the Wedbush Defendants, the Ion Defendants, and the CVS

2    Defendants as "Defendants."

3         **A.      Factual Allegations**

4         In 2013, Plaintiff entered a business venture with his business partner, Ronald Draper[2], to

5    trade electronic commodity futures spreads.  *See* Dkt. No. 75 (Second Amended Complaint, or

6    "SAC") ¶¶ 1, 28.  Draper contributed the initial capital in the amount of $275,000, while Plaintiff

7    "provided the operational expenses, skills, knowledge, technology, and carried out the actual

8    trading."  *Id.* ¶ 29.  On November 6, 2013, Main Street Trading, an introducing broker, connected

9    Draper and Plaintiff with KCG, a broker with whom they opened a trading account.  *See id.* ¶¶ 23,

10   34.  The account "was opened under Draper's name only for easier tax filing with the IRS."  *Id.* ¶

11   34.  Plaintiff alleges he was the sole actor involved in actual trading.  *See id.* ¶ 19(c).  Later, KCG

12   would be acquired by Wedbush, another broker.  *Id.* ¶ 38.  At all relevant times, KCG and

13   Wedbush outsourced the management of their trading platform to two entities: CVS, which

14   handled the front-end, and ION, which ran the back-end.  *See id.* ¶¶ 43-44.

15        Beginning on November 15, 2013, Plaintiff regularly experienced technical issues with the

16   trading platform.  *See id.* ¶ 104.  On that day, for example, the platform failed "to route and clear"

17   his trade orders.  *Id.*  Issues persisted through April 28, 2015.  *See id.* ¶¶ 105-44.[3]  Plaintiff alleges

18   that some of these failures resulted in missed trade opportunities.  *See id.* ¶¶ 107 (alleging a "total

19   loss of . . . missed trade opportunities" amounting to $394,400); 115 ($127,600); 135-37 ($5,000).

20   When Plaintiff "closed out all his open trading positions" on April 28, 2015, $6,621.49 of

21   Draper's initial contribution of $275,000 remained in the account.  *Id.* ¶ 144.

22        Plaintiff avers a total of 10 causes of action in the SAC, including fraudulent concealment,

23   fraudulent misrepresentation, breach of fiduciary duty, breach of contract, "aiding and abetting"

24   fraud, violation of several California consumer protection statutes, and "employment of

25

26   ───────────────
     [2] Draper is the plaintiff in a separate, related action before this Court.  *See Draper v. KCG
27   Americas LLC*, No. 18-cv-2425-HSG.
     [3] As he did in his First Amended Complaint, Plaintiff cites—often in conclusory fashion—to
28   exhibits in a "Comprehensive Exhibits File Folder."  He indicates these are on file with the Court.
     They are not, and so the Court disregards these references.

United States District Court
Northern District of California

manipulative computer software programs, computer servers, electronic trading facility and manipulative scheme to defraud" him.

**B.      Procedural Posture**

**1.      Prior to the Filing of the Second Amended Complaint**

Plaintiff filed the First Amended Complaint on May 16, 2017. Dkt. No. 11 ("FAC"). The causes of action, as well as the named Defendants, were identical to those in the SAC. On March 7, 2018, the Court dismissed Plaintiff's FAC because he lacked standing to seek the vast majority of his requested relief, as the capital with which he had traded belonged to Draper. *See* Dkt. No. 74 at 5-6. Additionally, the Court found that with respect to the relief for which he *might* have standing, Plaintiff had failed to state a claim under Federal Rule of Civil Procedure 9(b). *See id.* at 6-7. The Court gave him one opportunity to amend. *Id.* at 7.

**2.      After the Filing of the Second Amended Complaint**

Plaintiff filed the operative SAC on April 3, 2018. Dkt. No. 75.

On April 4, 2018, Plaintiff filed a motion challenging a decision by the Commodity Futures Trading Commission ("CFTC"). Dkt. No. 76 (Motion for Judicial Review, or "MJR"). On April 27, 2018, Defendants filed a joint opposition to Plaintiff's motion. Dkt. No. 91 ("MJR Opp."). Plaintiff replied on May 11, 2018. Dkt. No. 96 ("MJR Reply"). For reasons that are not clear, Plaintiff—who is not an attorney—purported to file his reply on behalf of both himself and Draper, whose separate lawsuit would soon be related. On July 5, 2018, the Court requested supplemental briefing in light of the Supreme Court's recent decision in *Lucia v. Securities & Exchange Commission*, 138 S. Ct. 2044 (2018). Dkt. No. 114. The parties submitted the requested briefing on July 26, 2018. Dkt. Nos. 117, 118.

On April 27, 2018, Defendants filed three motions seeking dismissal of the SAC. *See* Dkt. Nos. 86, 89, 90. Plaintiff filed a global opposition brief on May 11, 2018. Dkt. No. 95 ("MTD Opp."). Defendants replied on May 18, 2018. Dkt. Nos. 98, 99, 100.

On May 8, 2018, the ION Defendants filed a motion to relate Draper's case to Plaintiff's. Dkt. No. 94. The Court granted the motion on May 15, 2018, Dkt. No. 97, and did not consider Plaintiff's belatedly-filed opposition, *see* Dkt. No. 101.

1      On June 18, 2018, Plaintiff—again purporting to file on behalf of both himself and

2 Draper—moved to consolidate the two cases, Dkt. No. 102 ("Consolidation Mot."), and to stay

3 certain proceedings, Dkt. No. 103 ("Stay Mot."). On July 2, 2018, Defendants filed oppositions to

4 both motions. Dkt. Nos. 108, 109, 110, 113. Plaintiff replied on July 9, 2018. Dkt. Nos. 115,

5 116.

6      Also on June 18, Plaintiff—again purporting to file on behalf of both himself and Draper—

7 filed a second opposition to Defendants' motions to dismiss his SAC. Dkt. No. 104. The motion,

8 which styled Draper as a "specially-appearing plaintiff," also purports to oppose Defendants'

9 motions to dismiss Draper's complaint. *See id.* at 5. The ION Defendants accordingly filed an

10 objection, Dkt. No. 106, to which Plaintiff replied (again, purportedly on his and Draper's behalf),

11 Dkt. No. 112.

## II.      DISCUSSION

### A.      The Court Strikes Plaintiff's Impermissible Filings.

14      As a preliminary matter, Plaintiff filed a second opposition brief in response to

15 Defendants' motion to dismiss. Dkt. No. 104. When the ION Defendants objected, Dkt. No. 106,

16 Plaintiff filed another reply, Dkt. No. 112. Even setting aside the impropriety of Plaintiff, a non-

17 attorney, purporting to represent Draper, both filings violate the local rules because Plaintiff did

18 not seek or obtain the Court's leave to file them. *See* Civ. L.R. 7-3(d) (stating that "[o]nce a reply

19 is filed, no additional memoranda, papers or letters may be filed without Court approval," subject

20 to exceptions not relevant here). Accordingly, the Court strikes Docket Numbers 104 and 112.

### B.      The Court Denies the Motions to Stay and Consolidate.

22      Plaintiff seeks (1) consolidation of his action with Draper's, and (2) a stay pending

23 resolution of certain underlying administrative proceedings, Plaintiff's motion for judicial review,

24 and consolidation of his and Draper's actions. The Court denies both motions.

#### 1.      Motion to Consolidate

26      Plaintiff contends that absent consolidation of his action with Draper's, the cases will be

27 "unadjudicatable" because they are so complex. *See* Consolidation Mot. at 4. Plaintiff further

28 argues that the actions "seek to represent substantially the same Plaintiffs Harry and Draper, for

4

United States District Court
Northern District of California

1  essentially the same claims based on similar allegations," against the same Defendants. *Id.* at 5.

2  Upon consolidation, Plaintiff seeks permission to file a consolidated complaint. *See id.*

3  Defendants uniformly oppose the motion.

4  Under Federal Rule of Civil Procedure 42(a), a court may consolidate actions if they

5  "involve a common question of law or fact." The district court enjoys "broad discretion under this

6  rule to consolidate cases pending in the same district." *Investors Research Co. v. U.S. Dist. Court*

7  *for Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989); *see also Snyder v. Nationstar Mortg.*

8  *LLC*, No. 15-cv-03049-JSC, 2016 WL 3519181, at *2 (N.D. Cal. June 28, 2016) (same). In

9  exercising this "broad discretion," the district court "weighs the saving of time and effort

10  consolidation would produce against any inconvenience, delay, or expense that it would cause."

11  *Huene v. U.S.*, 743 F.2d 703, 704 (9th Cir. 1984), *on reh'g*, 753 F.2d 1081 (9th Cir. 1984); *see*

12  *also Snyder*, 2016 WL 3519181, at *2 (same).

13  While these cases are largely identical with respect to the relevant questions of law and

14  fact, the conduct of Plaintiff and Draper thus far demonstrates that consolidation would likely

15  result in further inconvenience to the Court and Defendants, not to mention additional expense to

16  the latter. There are strong indications that Plaintiff, who is not an attorney, has improperly been

17  acting in a representative capacity on behalf of Draper, given the joint filings submitted by both

18  and the similar language of their complaints. *See Johns v. Cnty. of San Diego*, 114 F.3d 874, 877

19  (9th Cir. 1997) ("[A] non-lawyer has no authority to appear as an attorney for others than

20  himself.") (citation and internal quotation marks omitted). Consolidating the cases, particularly

21  given the pro se status of the plaintiffs in both, would only blur the lines even more and make it

22  more difficult to ensure that Plaintiff and Draper are representing only themselves. Moreover, the

23  Court has already related the cases, which suffices in terms of preserving judicial economy under

24  these circumstances.

25  Accordingly, the Court exercises its broad discretion and denies Plaintiff's motion to

26  consolidate.

27

28

### 2.    Motion to Stay

Next, Plaintiff seeks a stay of this action pending the resolution of certain underlying administrative proceedings before the CFTC, his MJR, and the consolidation of the two actions. Stay Mot. at 3. As noted in this order, the Court denies the motions to consolidate and for judicial review, so the only remaining argument is that the Court should stay this action pending the CFTC proceedings. Defendants uniformly oppose the motion.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In order to issue a stay, courts consider: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55). Whether to stay an action is a matter entrusted to the discretion of the district court. *See Landis*, 299 U.S. at 254 ("How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). But *Landis* also "cautions that if there is even a fair possibility that the stay . . . will work damage to [someone] else, the stay may be inappropriate absent a showing by the moving party of hardship or inequity." *Dependable Highway Express, Inc. v. Navigators Ins. Co*, 498 F.3d 1059, 1066 (9th Cir. 2007) (citing *Landis*, 299 U.S. at 255) (internal quotation marks omitted).

Based on Plaintiff's litigation conduct thus far, the Court finds that a stay would "work damage" to Defendants, rendering it inappropriate. It may be true that Draper's proceedings before the CFTC are ongoing—but since Plaintiff by his own admission does not have standing to participate in those proceedings, *see* Stay Mot. at 4, it is unclear how they would affect his case.

1  Critically, there is more than a "fair possibility" that a stay would prolong Defendants' litigation

2  with Plaintiff—a litigant who has demonstrated an unwillingness to, for example, abide by the

3  local rules—and further complicate this action. Given the insufficiency of Plaintiff's showing of

4  "hardship or inequity," a stay is not warranted.

5       Accordingly, the Court exercises its discretion and denies Plaintiff's motion to stay.

6       **C.     The Court Denies Plaintiff's Motion for Judicial Review.**

7       Upon filing his SAC, Plaintiff filed a motion for judicial review ("MJR"), challenging the

8  appointment of the judgment officer who heard his case at the CFTC. He purports to file the

9  motion on behalf of Draper as well, which he cannot do as a non-attorney. Accordingly, the Court

10  considers the motion only as it pertains to Plaintiff, and denies the motion.

11       In sum, Plaintiff seeks vacatur of the underlying CFTC decision on the ground that the

12  judgment officer who presided over the agency proceeding was improperly appointed under

13  Article II, section 2, clause 2 of the Constitution ("the Appointments Clause"). *See* MJR at 5, 11.

14  Although the Court subsequently directed supplemental briefing on whether the recent Supreme

15  Court decision in *Lucia v. Securities Exchange Commission* affects the analysis of Plaintiff's

16  Appointments Clause argument, *see* Dkt. No. 114, the Court has determined that it need not reach

17  that issue in order to deny the motion for lack of jurisdiction.

18       Under the Commodity Exchange Act, 7 U.S.C. §§ 1 *et seq.* ("CEA"), a "person

19  complaining of a violation" of the statute may file a petition for a "reparation proceeding" before a

20  CFTC judgment officer. 7 U.S.C. § 18(a)(1); *see also* 17 C.F.R. § 12.26. That person may then

21  appeal that "initial decision" to the CFTC itself. *See* 17 C.F.R. § 12.401(a). Following issuance

22  of the CFTC's "final decision," *see* 17 C.F.R. § 12.406(a), that order "shall be reviewable on

23  petition of any party aggrieved thereby, by the United States Court of Appeals for any circuit in

24  which a hearing was held, or if no hearing was held, any circuit in which the appellee is located,"

25  7 U.S.C. § 18(e); *see also* 17 C.F.R. § 12.406(c). "Such appeal shall not be effective unless within

26  30 days from and after the date of the reparation order the appellant also files with the clerk of the

27  court a bond[.]" 7 U.S.C. § 18(e).

28       The CEA, in other words, is unambiguous: any challenge to a final order of the CFTC

1  must be brought in the appropriate Circuit Court of Appeals, in accordance with section 18(e)—

2  not the district court. Plaintiff provides no meaningful basis for his decision to file the MJR in this

3  Court, contending only that he is "under no legal obligation to [a]ppeal to any CFTC Tribunal or

4  the Ninth Circuit because CFTC never sued any of the 14 Defendants in this Court, at the CFTC

5  Tribunal, on behalf of [Plaintiff]." MJR Reply at 11. But Plaintiff misapprehends the import of

6  the agency's determination that he had no standing to participate in the underlying reparation

7  proceeding. *See* Dkt. No. 92 (Wedbush Defendants' Request for Judicial Notice), Exs. 3, 7. That

8  determination *in itself* is the decision for which he would have sought review as described in the

9  CEA—first by the CFTC, then by the appropriate Court of Appeals.

10  Accordingly, the Court denies Plaintiff's MJR. The CEA makes plain that the appropriate

11  venue for judicial review of final decisions by the CFTC is the Court of Appeal, not the district

12  court.[4]

13  ### D.    The Court Grants Defendants' Motions to Dismiss.

14  In its order dismissing the FAC, the Court found that Plaintiff lacked standing to recover

15  any alleged losses stemming from Draper's $275,000 investment in their joint venture. *See* Dkt.

16  No. 74 at 5-6. The Court did, however, grant Plaintiff one opportunity to amend the FAC to allege

17  additional facts regarding his alleged loss of $4,527.25, which he claimed to have paid to

18  Defendants for the trading platform. *See id.* at 6-7. The Court further noted that Plaintiff would

19  be required to plead in accordance with the heightened pleading requirements of Federal Rule of

20  Civil Procedure 9(b). *Id.* Plaintiff represents that the only amendments he made to the FAC are

21  his arguments on standing on pages 4 to 13 of the SAC. *See* MTD Opp. at 14.

22  Defendants renew their arguments from the previous round of litigation and claim that

23  Plaintiff has again failed to allege facts showing that he has standing to sue. *See* Dkt. No. 86 at 6-

24  9; Dkt. No. 89 at 3; Dkt. No. 90 at 6-9. The Court limits its standing analysis to Plaintiff's federal

25  claims under the CEA, considers the additional allegations in the SAC, and grants Defendants'

26

27  [4] Furthermore, Plaintiff appears to concede in his supplemental briefing regarding *Lucia* that his
    MJR is moot. *See* Dkt. No. 118 at 2 ("Thus, the methodology of appointing [the judgment officer]

28  through the Appointments Clause is no longer relevant."). In the alternative, the Court therefore
    also denies the MJR on the ground that it is moot.

1   motions with prejudice.

2               **1.      Legal Standard**

3          Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss based on the

4   court's lack of subject matter jurisdiction. "A Rule 12(b)(1) jurisdictional attack may be facial or

5   factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v.*

6   *Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). A facial attack "asserts that the allegations contained

7   in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* A factual attack

8   "disputes the truth of the allegations that, by themselves, would otherwise invoke federal

9   jurisdiction." *Id.*

10         "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,'

11  and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean*

12  *Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). Because a plaintiff's standing is a

13  prerequisite to a federal court's exercising subject matter jurisdiction over his cause of action, a

14  defendant may challenge standing via a Rule 12(b)(1) motion. *See, e.g.*, *Chandler v. State Farm*

15  *Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010) (affirming district court's grant of Rule

16  12(b)(1) motion asserting that plaintiff lacked standing).[5] Consistent with Article III, "the

17  'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v.*

18  *Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

19  (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the

20  challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

21  decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61). Injury in fact is "the first and foremost of

22  standing's three elements," and requires a showing that a plaintiff "suffered an invasion of a

23  legally protected interest that is concrete and particularized and actual or imminent, not conjectural

24  or hypothetical." *Id.* at 1547-48 (citations, internal quotation marks, and brackets omitted). To be

25  concrete, an injury "must actually exist." *Id.* at 1548. To be particularized, "the injury must affect

26

27  ─────────────────────
[5] Although only one of the three motions before the Court expressly raises and applies the
    standard under Rule 12(b)(1), the Court is nonetheless "obligated to consider sua sponte whether
28  [it has] subject matter jurisdiction." *Jasper v. Maxim Integrated Prods., Inc.*, 108 F. Supp. 3d 757,
    764 (N.D. Cal. 2015) (quoting *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004)).

the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

"Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). For that reason, "a

*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and internal

quotations marks omitted). If dismissal is still appropriate, a court "should grant leave to amend

even if no request to amend the pleading was made, unless it determines that the pleading could

not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th

Cir. 2000) (citation and internal quotation marks omitted).

### 2. Discussion

The allegations in the SAC regarding Plaintiff's injury-in-fact for purposes of standing go

to one of three theories. The Court has already rejected two of these theories, and all of them fail.

#### a. Plaintiff's Standing Arguments Repeated from the FAC

First, Plaintiff repeats his allegations from the FAC that he suffered a direct loss of

$287,462.50 and "consequential" losses of $45 million. *See, e.g.*, SAC ¶ 6. As the Court found in

its previous order, this amounts to an attempt "to recover losses to the initial $275,000 contributed

to the trading account by Draper"—*i.e.*, "to vindicate the invasion of a legally protected interest

. . . that is indisputably not his." Dkt. No. 74 at 5.

Second, Plaintiff again asserts standing based on the "time, energy, resources and money"

required "to analyze and monitor Draper and [Plaintiff's] electronic trades 24/6 . . . during the 17

month Trading Period." *See* SAC ¶ 7. He contends that "[i]t costs at least $10,000 per month to

trade a $275,000 Commodity Futures Trading Account," and accordingly seeks $170,000 (*i.e.*,

$10,000 per month for the relevant 17-month period). *Id.* But Plaintiff provides no basis for the

$10,000 figure, except to claim that he "could have taken a job as a Commodity Futures Trader

and made more than $10,000 per month." *Id.* As the Court found in its order dismissing the FAC,

such an injury is improperly conjectural and speculative. *See* Dkt. No. 74 at 5 n.5 (also stating

that "the physical or mental toll of trading, generally alleged, is not sufficiently concrete")

United States District Court
Northern District of California

United States District Court
Northern District of California

1  (citations and internal quotation marks omitted).[6]

2  Plaintiff therefore cannot assert standing on either of these grounds.

3  **b.      Plaintiff's Standing Arguments Regarding His Alleged Actual Losses**

4

5  The third standing theory posited by Plaintiff is the one the Court asked him to elaborate

6  upon in its order dismissing the FAC, and is based on certain operational expenses he allegedly

7  incurred in the course of trading. *See* SAC ¶¶ 4 (alleging that Plaintiff "lost money" due in part to

8  "operational expenses" and the "cost of trading equipment"), 7 (noting that Plaintiff "spent

9  between $299.95 and $315 per month of his own money for the Trading Software, [CVS], to Place

10  the Electronic Trade Orders for Draper and Harry's . . . Joint Venture Trading Account, under

11  Ronald Draper's name . . . for about 15 to 17 months," and that he "spent a few thousand dollars

12  of his own money for Software and Hardware (including a 3-Monitor Hardware System) to carry

13  out the electronic Trades"), 225 (alleging that Plaintiff paid the CVS Defendants $299.95 per

14  month to use their trading platform). In his prayer for relief, Plaintiff states that he is seeking

15  $4,527.25 for the CVS Defendants' "dysfunctional" trading platform. SAC at 88(A). He provides

16  no indication as to how he arrived at that figure. Moreover, a paragraph from the FAC that

17  remained in the SAC contains an allegation that directly contradicts Plaintiff's contention that he

18  paid the platform fees: "Furthermore, Draper's Good Faith Deposit of $275,000 . . . is a negative

19  investment in that, *every month at least $300 will be taken out of the Deposit for Trading Platform*

20  *and Exchange Fees*, whether Draper traded or not." *See* SAC ¶ 69 (emphasis added); *see also*

21  FAC ¶ 39 (same).

22  As the Court found in dismissing the FAC, the only injury in fact which Plaintiff could

23  allege is the money he spent on the trading platform. Plaintiff has not sufficiently alleged standing

24  in this regard. His allegation that he "spent a few thousand dollars" on software and hardware is

25  not sufficiently concrete, nor does he allege any facts that demonstrate the required nexus—*e.g.*,

26  that Defendants fraudulently induced him to buy this hardware and software in order to trade on

27

28  [6] Plaintiff's claim to $45 million in consequential damages (*i.e.*, "lost profits"), *see* SAC at 88-89, is also facially speculative and thus insufficient for purposes of alleging an injury-in-fact.

11

1    their system.  *See* SAC ¶ 7.  As for the $4,527.25 he purports to seek in his prayer for relief,

2    Plaintiff alleges no facts in support of that figure, leaving it entirely up to the Court to guess how

3    he arrived at it.  Most saliently, Plaintiff's allegations that he paid a monthly fee for use of the

4    trading platform is undercut by his allegation that "at least $300" was withdrawn out of Draper's

5    $275,000 deposit every month for platform fees.  *See* SAC ¶ 69.  These contradictory allegations

6    do not plausibly allege an injury in fact for purposes of establishing Plaintiff's standing, especially

7    given the heightened pleading requirement under Federal Rule of Civil Procedure 9(b).  *See*

8    *Kakogui v. Am. Brokers Conduit*, No. 09-CV-4841-LHK, 2010 WL 3629825, at *2 (N.D. Cal.

9    Sept. 14, 2010) (dismissing Truth in Lending Act claim with prejudice as futile where plaintiff set

10   forth "vague, conclusory, and internally contradictory allegations"); *Coppes v. Wachovia Mortg.*

11   *Corp.*, No. 2:10-cv-01689-GEB-DAD, 2011 WL 1402878, at *7 (E.D. Cal. Apr. 13, 2011)

12   (finding that internally contradictory allegations failed to plausibly allege a duty of care); *Gross v.*

13   *Symantec Corp.*, No. C 12-00154 CRB, 2012 WL 3116158, at *6 (N.D. Cal. July 21, 2012)

14   (suggesting that internally contradictory allegations would "defeat plausibility").

15          Accordingly, the Court finds that Plaintiff lacks standing to bring his federal CEA claims,

16   and grants Defendants' motions as to those claims with prejudice.  While the Court is mindful of

17   Plaintiff's pro se status, this is the third iteration of his complaint, and he has now twice failed to

18   allege sufficient facts showing that he meets the threshold standing requirements.  The Court reads

19   this failure to establish that he cannot truthfully do so, such that granting leave to amend would be

20   futile.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here

21   the plaintiff has previously been granted leave to amend and has subsequently failed to add the

22   requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is

23   particularly broad.") (citation, internal quotations, and original brackets omitted); *Lopez*, 203 F.3d

24   at 1130.

25                          **3.      Remaining Jurisdictional Issues**

26          Without Plaintiff's CEA claims, this Court lacks federal question jurisdiction, as Plaintiff's

27   remaining causes of action arise under California law.  Moreover, there is no basis for exercising

28   diversity jurisdiction, as there is not complete diversity between Plaintiff and Defendants.

1  *Compare* SAC ¶ 52 (alleging that Plaintiff is a resident of Fremont, California), *with id.* ¶ 88

2  (alleging that Defendant Main Street Trading, Inc. is a California corporation); *see Lee v. Am.*

3  *Nat'l Ins. Co.*, 260 F.3d 997, 1004 (9th Cir. 2001) (holding that "to bring a diversity case in

4  federal court against multiple defendants, each plaintiff must be diverse from each defendant").[7]

5  And, while the Court may in its discretion exercise supplemental jurisdiction over Plaintiff's

6  remaining state-law claims, *see* 28 U.S.C. § 1367(a), it may decline to do so if, as here, it has

7  dismissed all claims over which it has original jurisdiction, *see Sanford v. MemberWorks, Inc.*,

8  625 F.3d 550, 561 (9th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)). "[I]n the usual case in which

9  all federal-law claims are eliminated before trial, the balance of factors to be considered under the

10  pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point

11  toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* (citation

12  omitted) (original brackets). The Court finds this to be "the usual case," and accordingly declines

13  to exercise supplemental jurisdiction and dismisses Plaintiff's state-law claims without prejudice,

14  for lack of jurisdiction.

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25

---

26  [7] As support for his claims, Plaintiff attached to the SAC copies of two checks he apparently made out to one of the Wedbush Defendants—one for $599.90, and the other for $627.90. *See* Dkt. No.

27  75-1. Plaintiff pleads insufficient facts regarding the circumstances surrounding those payments, however, and in any event, the sum of the checks does not approach the $75,000 amount-in-

28  controversy threshold required for diversity jurisdiction, even had there been complete diversity here. *See* 28 U.S.C. § 1332(a).

13

## III. CONCLUSION

For the foregoing reasons, the Court **STRIKES** Docket Numbers 104 and 112; **DENIES** Plaintiff's motion to consolidate; **DENIES** Plaintiff's motion to stay; and **DENIES** Plaintiff's motion for judicial review.  Further, the Court **GRANTS** Defendants' motions to dismiss as follows: Plaintiff's federal claims are **DISMISSED WITH PREJUDICE** and his state-law claims are **DISMISSED WITHOUT LEAVE TO AMEND, BUT WITHOUT PREJUDICE** to refiling in state court.  The Clerk is directed to close the case.

**IT IS SO ORDERED.**

Dated:  8/27/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

14